UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GRO HOLDCO, LLC,
d/b/a/ BLUE SKY VISION,

    Plaintiff,

v.

HARTFORD FIRE INSURANCE
COMPANY,

    Defendant.
_____/

Case No. 1:20-cv-1093

Hon. Hala Y. Jarbou

## OPINION

Plaintiff GRO Holdco, LLC (GRO), brings a diversity action alleging that its insurer, Defendant Hartford Fire Insurance Company, failed to provide coverage when GRO shuttered its doors as a result of the coronavirus pandemic. (First Am. Compl., ECF No. 9.) Counts I-III claim breach of contract for Hartford's refusal to pay under the property loss, civil order, and impairment of ingress and egress provisions of the insurance policy. Count IV seeks the Court's declaration that the relevant policy provisions have been triggered and that none of the policy's exclusion provisions apply. Hartford moved to dismiss, arguing that a policy exclusion precludes coverage, and that the policy was not triggered anyway since none of GRO's businesses have suffered physical damage. (ECF No. 14.) The motion will be granted.

### I. Jurisdiction

GRO asserts breach of contract, which is rooted in state law. The company originally filed this lawsuit in Michigan state court. Citing the existence of diversity jurisdiction, Hartford removed to this Court. (Notice of Removal, ECF No. 1.)

Federal courts are courts of limited jurisdiction and are generally incapable of entertaining actions based entirely on state law. By statute, however, federal courts possess subject matter jurisdiction over cases rooted in state law so long as the amount in controversy exceeds $75,000 and no plaintiff is the citizen of the same state as any defendant. 28 U.S.C. § 1332.

Here, the amount in controversy exceeds $75,000. (*See* Notice of Removal, PageID.4-5.) Hartford is incorporated in Connecticut, which is also its principal place of business. (*Id.*, PageID.6.) Thus, this Court has subject matter jurisdiction if GRO is not a citizen of Connecticut.

As an LLC, GRO shares citizenship with each of its members. *See V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 356 (6th Cir. 2010) (quoting *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009)). The Court lacked information about GRO's membership, but the company has now provided the necessary details. (*See* Suppl., ECF No. 23.) Having reviewed the supplemental filing provided by GRO, the Court is satisfied that the company is a citizen of Delaware, Michigan, Colorado, Illinois, New York, California, Texas, Tennessee, and Ontario, Canada. (*Id.*)

None of GRO's members is a citizen of Connecticut. There is complete diversity and the Court therefore has subject matter jurisdiction over this case.

## II. Background

The following allegations are made in GRO's complaint, which the Court assumes are true for the present motion. GRO "owns and operates 28 ophthalmology and optometry clinics and 3 ambulatory surgical centers" across Michigan. (First Am. Compl. ¶ 1.) The coronavirus pandemic hit in 2020. "Beginning in March 2020," Michigan officials issued several orders that required "most of [GRO's] facilities" to close. (*Id.* ¶ 2.) Business income suffered a "staggering" loss. (*Id.* ¶ 4.) GRO turned to Hartford, which had sold GRO a "Special Multi-Flex Policy" that "provides

for reimbursement of lost business income in the event [GRO's] business operations are suspended or experienced a slowdown." (*Id.* ¶ 5.) Hartford denied coverage. (*Id.* ¶ 7.)

### III. Standards

**A. Failure to State a Claim**

When considering a motion to dismiss brought under Rule 12(b)(6), courts must ask whether the plaintiff has alleged "facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level,' and . . . 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausible does not mean probable, but the standard "asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a plaintiff pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

On a motion to dismiss, courts must accept factual allegations as true, but will reject conclusory statements as "not entitled to the assumption of truth." *Id.* (citing *Twombly*, 550 U.S. at 555-56). Hence, courts will ignore conclusory assertions and, accepting well-pleaded factual allegations as true, determine whether the allegations "plausibly give rise to an entitlement to relief." *Id.* Determining the plausibility of a claim is a "context-specific" inquiry, "requiring the reviewing court to draw on its experience and common sense." *Id.* If the court decides that there is no plausible claim to relief, then the motion to dismiss will be granted.

### B. Interpreting Insurance Contracts

The parties agree that Michigan law controls the insurance contract at issue. Insurance policies must be construed "in the same manner as any other species of contract, giving its terms their 'ordinary and plain meaning if such would be apparent to a reader of the instrument.'" *DeFrain v. State Farm Mut. Auto. Ins. Co.*, 817 N.W.2d 504, 509 (Mich. 2012) (quoting *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 780 (Mich. 2003)). Where the meaning of a provision is unambiguous, courts must enforce the contract as written without consideration of extrinsic evidence. *Upjohn Co. v. New Hampshire Ins. Co.*, 476 N.W.2d 392, 398 n.6 (Mich. 1991).

Provisions in insurance contracts limiting the scope of coverage are valid "as long as the policy language fairly leads to only one reasonable interpretation and is not in contravention of public policy." *Trierweiler v. Frankenmuth Mut. Ins. Co.*, 550 N.W.2d 577, 579 (Mich. Ct. App. 1996) (citing *Heniser v. Frankenmuth Mut. Ins. Co.*, 534 N.W.2d 502 (Mich. 1995)). "An insurance company should not be held liable for a risk it did not assume." *Id.* (citing *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431 (Mich. 1992)). Exclusionary clauses are "strictly construed in favor of the insured," but "coverage under a policy is lost if any exclusion in the policy applies to an insured's particular claim." *Id.*

The insured bears the burden of proving that the policy covers the claimed losses. *Williams v. Detroit Fire & Marine Ins. Co.*, 27 N.W. 452, 453 (Mich. 1937). The insurer, on the other hand, carries the burden of proving that a policy exclusion precludes coverage of an otherwise covered loss. *Heniser*, 534 N.W.2d at 505 n.6.

### IV. Analysis

At issue is the proper meaning of several provisions in GRO's insurance policy from Hartford. On a motion to dismiss, the Court's analysis is normally limited to the four corners of the complaint. The Court could not consider matters outside the pleadings without treating the

4

motion to dismiss as a motion for summary judgment. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). GRO attached its insurance policy to the complaint (ECF No. 9-1), thus the Court may examine the policy without converting the present motion to a motion for summary judgment.

Hartford raises several arguments about why it is not obligated to cover GRO's lost business income as a result of the state-mandated business closures. Hartford's argument regarding the virus exclusion provision in the policy is correct and disposes of the entire case. The Court will therefore limit its analysis to that provision.

**A. Virus exclusion**

Under the policy, Hartford promised to "pay for direct physical loss of or direct physical damage to . . . Covered Property by or resulting from a Covered Cause of Loss." (Policy Form PC 00 10 01 18, ECF No. 9-1, PageID.510.) Coverage further extends to certain situations in which a civil authority prevents access to covered property or ingress and egress to covered property is prohibited following a covered cause of loss in nearby areas. (Policy Form PC 26 02 01 18, ECF No. 9-1, PageID.502, 506-07.) The policy also reimburses lost business income during periods of "interruption" in "business operations" following covered damage to covered property. (Policy Form PC 00 20 01 18, ECF No. 9-1, PageID.516.) However, the policy does not cover any "loss or damage [that] is excluded or limited" by another policy provision. (Policy Form PC 10 10 01 18, ECF No. 9-1, PageID.523.)

The policy contains a provision excluding coverage for loss caused by a virus: Hartford "will not pay for loss or damage caused *directly or indirectly* by" the "[p]resence, growth, proliferation, spread, or any activity of . . . [a] virus." (*Id.*, PageID.523-524 (emphasis added).) Moreover, this provision is subject to an anti-concurrent causation clause. That means the damage caused by a virus "is excluded regardless of *any other cause or event* that contributes concurrently or in any sequence to the loss or damage" sustained. (*Id.*, PageID.523 (emphasis added).) Thus, the exclusion applies to any loss where a virus forms any part of the causal change; a virus need not be the most direct or immediate cause of loss for the exclusion to apply. *Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*, 484 F. Supp. 3d 492, 503 (E.D. Mich. 2020). In sum, if GRO suffered harm that is directly or indirectly caused by a chain of events, and somewhere in that chain of events is a virus, Hartford is not on the hook.

The virus exclusion is broad but unambiguous. GRO's claims are excluded. The virus causing COVID-19 arrived in Michigan and began to spread rapidly. In March 2020, the Governor of Michigan issued executive orders requiring non-essential businesses to shutter. The purpose of these orders was to "mitigate" and "suppress" the "spread of COVID-19." Executive Order 2020-17 (effective March 21, 2020) (mitigation language); Executive Order 2020-21 (effective March 24, 2020) (suppression language). Applying the language of the exclusion, combined with the anti-concurrent causation clause, it is clear that GRO's losses are not covered: a new virus came to Michigan, which caused the state government to order temporary shuttering of businesses, which caused losses to GRO's businesses. The "spread" of a virus occurred in the chain of causation leading to GRO's lost income.

Applying Michigan law to a virus exclusion subject to an anti-concurrent causation provision, the court in *Turek Enterprises* reached the same conclusion. *Turek Enters.*, 484 F. Supp.

6

3d at 503. There, the court found that the executive orders to close non-essential businesses would not have occurred "but for COVID-19," and that "even if the [orders] were a more proximate cause than COVID-19, coverage would still be excluded." *Id.* The same logic applies here. No reasonable construction of the policy language would require Hartford to cover GRO's losses here.

**B. GRO's Counterarguments**

GRO raises various counterarguments against the applicability of the virus exclusion.

It asserts that a subsequent amendment to the policy nullified the anti-concurrent causation provision of the virus exclusion. The amendment, called an endorsement, does not apply an anti-concurrent causation clause to virus exclusions. (*See* Endorsement Form HC 21 90 06 08, ECF No. 9-1, PageID.663.) But the endorsement also lists the sections of the policy it modifies: (1) "commercial general liability coverage"; (2) "owners and contractors liability coverage"; (3) "products/completed operations liability coverage"; (4) "railroad protective liability coverage"; (5) "manufacturers' errors and omissions lability coverage"; (6) "educators legal liability coverage"; and (7) "condominium and cooperative directors and officers liability coverage." (*Id.*) GRO is claiming coverage under the "property choice" coverage section.[1] (*See* First Am. Compl. ¶ 26 (citing Policy Form PC 10 10 01 18, PageID.523).) On its face, then, the endorsement does not amend the policy coverage and exclusionary language at issue in this case. The relevant virus exclusion is subject to an anti-concurrent causation clause. In a footnote, GRO argues that "[a]t best, the conflicting Endorsement is ambiguous . . . and ambiguity should be construed against" Hartford. (Pl.'s Resp. Br., ECF No. 16, PageID.884 n.6.) There is no ambiguity here; the

---

[1] The civil authority and ingress/egress coverages are extensions of the "property choice" coverage. That is, those provisions do not provide coverage where no covered cause of loss has occurred at a covered property protected by "property choice" coverage.

endorsement does not amend the "property choice" coverage section that forms the basis of GRO's claim here.

GRO next attacks the effect of the anti-concurrent causation clause. It cites a case from the Eastern District of Virginia, which held that, even with an anti-concurrent causation clause, a virus exclusion could only apply where there is a "direct connection between the exclusion and the claimed loss . . . [and] the connection must be the *immediate cause* in the chain." *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-cv-265, 2020 WL 7249624, at *12 (E.D. Va. Dec. 9, 2020) (emphasis added). However, this holding followed from the court's determination that "the anti-concurrent [causation] theory has not been established as law in [Virginia]." *Id.* In Michigan, on the other hand, anti-concurrent causation clauses are valid. *See Matthews v. Harleysville Ins. Co.*, 826 F. App'x 508, 513-514 (6th Cir. 2020) (applying Michigan law); *Dahlke v. Home Owners Ins. Co.*, 2003 WL 23018291, at *3 (Mich. Ct. App. Dec. 23, 2003) (applying anti-concurrent causation clause in insurance contract). An "immediate cause in the chain" is not necessary.

GRO also argues the virus exclusion is inapplicable because it "is not claiming that the virus was present" at its covered properties. (Pl.'s Resp. Br., PageID.885.) But, for the reasons explained above, physical presence of the virus at GRO's specific properties is not necessary for the virus exclusion to apply. GRO's businesses were shuttered because of executive orders aimed at stopping the spread of COVID-19. The virus exclusion clause applies in this case.

GRO also suggests that dismissal is improper because it has made no allegations with respect to the purpose of the executive orders shuttering non-essential businesses. (*Id.*) However, the executive orders are public records that are refenced in the complaint and central to GRO's claim—as GRO admits, its businesses had to close because of them. Thus, the Court may properly

consider the relevant executive orders even if the complaint does not contain allegations regarding the purpose of those orders.  *Gavitt*, 835 F.3d at 640.  Relatedly, GRO argues that in the absence of allegations regarding the purpose of the executive orders, the Court must view the orders as "the exclusive cause of the losses." (Pl.'s Resp. Br., PageID.885.)  This argument fails for the same reason.

## V. Conclusion

For the foregoing reasons, the Court finds that the virus exclusion clause in the policy at issue applies to GRO's claims here.  Hartford is therefore not obligated to cover GRO's claimed losses.  The Court will grant Harftford's motion to dismiss.  An order and judgment will enter consistent with this Opinion.

Dated:  May 7, 2021                                             /s/ Hala Y. Jarbou
                                                                                    HALA Y. JARBOU
                                                                                    UNITED STATES DISTRICT JUDGE